

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 9 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>FERNANDO BARROSO, SR.,<br><br>        Defendant. | CR No. 18-  CR18-00882-MwF<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Defraud the United States, Submit False Claims, and Commit Bribery; 18 U.S.C. §§ 208(a), 216(a)(2): Conflicts of Interest; 18 U.S.C. § 287: False, Fictitious, and Fraudulent Claims Against United States; 18 U.S.C. § 201(b)(2): Acceptance of Bribes; 18 U.S.C. § 1001(a)(2): False Statement; 26 U.S.C. § 7206(1): Subscription to False Tax Returns; 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

//

//

//

//

//

//

//

DOB
DOB

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

A.   PARTIES AND ENTITIES

1.   The United States Department of the Navy ("U.S. Navy") operated the Naval Facilities Engineering Command ("NAVFAC"), Public Works Department ("PWD"), which was responsible for facilities maintenance and management for U.S. Navy and United States Marine Corps installations.  On occasion, PWD contracted with private vendors to provide building and infrastructure maintenance for United States Navy facilities.

2.   The U.S Navy operated Naval Base Ventura County (the "Naval Base"), an installation in Ventura County, within the Central District of California, composed of three facilities: Point Mugu, Port Hueneme, and San Nicolas Island.

3.   Defendant FERNANDO BARROSO, SR. ("BARROSO") was the Master Scheduler for the PWD at the Naval Base.  As Master Scheduler, defendant BARROSO was responsible for approving material purchases, service contracts, vendors with whom PWD contracted, and payments on invoices.  Defendant BARROSO supervised PWD purchasing agents, also known as buyers or Government Purchase Card ("GPC") holders.  GPC holders interacted directly with PWD vendors, placed orders for supplies and services, and paid vendor invoices.

4.   Co-conspirator A was the Chief Executive Officer of Company 1, a California corporation engaged in the plumbing, heating, and air-conditioning business headquartered in Oxnard, California.  Co-conspirator A was also a blood relation of defendant BARROSO.

5.   Co-conspirator Theodore Bauer ("Bauer") was a Ventura County businessman and president of Gold Coast Supply, Inc. ("GCS"),

2

a California corporation headquartered in Camarillo, California, that serviced both private sector accounts and procurement work for the U.S. Navy.

6.    On or about July 9, 2009, co-conspirator Bauer incorporated Western Military Supply.com ("WMS"), a California corporation headquartered in Camarillo, California.

7.    On or about September 13, 2011, defendant BARROSO incorporated F. Barroso & Sons ("FB&S"), a California corporation headquartered in Oxnard, California, and operated that company as its Chief Executive Officer.

8.    On or about November 15, 2011, co-conspirator Bauer incorporated MNC Facility Services, Inc. ("MNC"), a California corporation headquartered in Ventura, California.

9.    T&A Carpet Cleaning Technology Advance, Inc., also known as T&A Services & Supplies, Inc. ("T&A"), was a California corporation headquartered in Oxnard, California.  On December 1, 2013, defendant BARROSO purchased 85 percent of T&A's shares.

B.    PROCUREMENT RULES AND REGULATIONS

10.   Federal Acquisition Regulations, United States Department of Defense Guidelines, U.S. Navy Instructions, and PWD Standard Operating Procedures (individually and collectively, "Government Procurement Regulations") mandated that GPC use for the purchase of materials and services meet various requirements and follow certain procedures in order to avoid fraud, abuse, and conflicts of interest.

11.   GPC use was limited to a "micro-purchase" threshold of $3,000 for material purchases and a threshold of $2,500 for contract services, which meant GPC holders could utilize simplified procedures to purchase items below that threshold.  The "splitting" of purchases

was expressly forbidden and defined as "[a GPC holder] processing multiple purchases from the same merchant on the same day, the total of which exceeds the single purchase limit, when the total requirement was known at the time of the first purchase."

12. The (a) initiation of a procurement request, (b) award of a purchase/service contract to a particular vendor, and (c) receipt/inspection of materials/completed services were each required to be performed by different individuals, ensuring a three-way separation of function to maintain the integrity of the procurement process.

13. PWD employed "Maximo," a unified, end-to-end procurement database to receive and process procurement requests to ensure traceability throughout the procurement process.

14. PWD Standard Operating Procedures for GPC transactions required the following:

a. In the event a Work Order had been issued and the assigned Technician identified a need for materials, he/she would prepare a Government Purchase Card Order/Material Request Form ("MRF") and submit it to his/her Shop Supervisor or Work Lead for approval. The Shop Supervisor or Work Lead would sign the MRF and submit it to the Approving Official, defendant BARROSO.

b. Defendant BARROSO would verify that the MRF complied with the terms of a valid Work Order. Upon approval, defendant BARROSO would assign the matter to a GPC holder and enter their name into Maximo.

c. The GPC holder would select a vendor from an approved list, obtain a quote, and submit it to defendant BARROSO. Defendant BARROSO would verify that the quote did not exceed the micro-purchase

threshold, otherwise it would be handled by government buyers outside of PWD.  If approved, defendant BARROSO would sign the MRF and return it to the GPC holder for purchase.

d.   The GPC holder would access Maximo to generate a purchase order, called a Government Purchase Card Requisition ("GPCR"), print it out, and obtain defendant BARROSO's approving signature.  The GPC holder would then make the purchase.

e.   When material arrived, the GPC holder would stamp the vendor invoice indicating receipt and notify the Shop Supervisor or Work Lead.  The Shop Supervisor or Work Lead would then inspect the material and, if conforming, sign the stamped vendor invoice as received.  The GPC holder would enter receipt of the material into Maximo.

f.   If a Work Order identified a need for outside contract services, defendant BARROSO would select the vendor, verify completion of the work, approve the vendor's invoice for payment, assign the invoice to a GPC holder to create a GPCR in Maximo and print it out.  Defendant BARROSO would then sign the GPCR, thereby approving the GPC holder's issuance of payment to the vendor.

g.   The GPC holder would certify on the hard copy of the GPCR that the approval requirements were met in accordance with Public Works Center Instructions for Credit Card Purchases.

15.   These Introductory Allegations are hereby incorporated by reference into Counts One through Thirteen of this Indictment as though fully set forth therein.

COUNT ONE

[18 U.S.C. § 371]

A.   OBJECTS OF THE CONSPIRACY

Beginning in or before 2008, and continuing through at least on or about March 20, 2014, in Ventura County, within the Central District of California, and elsewhere, defendant BARROSO, co-conspirator A, co-conspirator Bauer, and certain co-conspirator GPC holders, together with co-conspirators known and unknown, knowingly combined, conspired, and agreed to commit offenses against the United States, namely:

1.   to defraud the United States and agencies thereof, namely, the U.S. Navy, by impeding, impairing, obstructing, and defeating the lawful governmental functions of the U.S. Navy by deceitful and dishonest means, in violation of Title 18, United States Code, Section 371;

2.   to knowingly and willfully make and submit false, fictitious, and fraudulent claims against the U.S. Navy in violation of Title 18, United States Code, Section 287; and

3.   to directly and corruptly give, offer, and promise money, to a public official, namely, defendant BARROSO, with intent to: (i) influence official acts; (ii) influence defendant BARROSO to commit and aid in committing, collude in, and allow, a fraud on the United States; and (iii) induce defendant BARROSO to do an act in violation of his official duty, in violation of Title 18, United States Code, Sections 201(b)(1) and 201(b)(2).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

ACCOMPLISHED

     The objects of the conspiracy were to be accomplished, in

substance, as follows:

          1.   Defendant BARROSO would prepare or cause the

preparation of Work Orders ("WOs"), Material Request Forms ("MRFs"),

and GPC Requisition Forms ("GPCRs") to direct the U.S. Navy to make

purchases from companies controlled by himself, co-conspirator A, co-

conspirator Bauer, and other family members of defendant BARROSO.

          2.   Defendant BARROSO would sign and approve MRFs and

GPCRs that were in non-compliance with Government Procurement

Regulations in order to direct purchases to defendant BARROSO's

preferred vendors.  Defendant BARROSO would backdate his signature on

GPCRs in order to make it falsely appear as if the GPCRs had been

properly authorized through the required process.

          3.   Co-conspirator A, co-conspirator Bauer, and other co-

conspirators would cause the issuance of vendor invoices that

inflated the quantity of items delivered and the hours worked on

service contracts, and mis-identified the recipient or beneficiary of

such materials or services, which thereby inflated the associated

costs purportedly owed by the U.S. Navy.

          4.   Co-conspirator Bauer's companies and other co-

conspirator vendors would fail to supply material or services in

response to GPCRs but, nevertheless, issue invoices requesting the

U.S. Navy to provide payment for such non-existent materials and

services.

          5.   Defendant BARROSO would sign "RECEIVED AND ACCEPTED"

stamps on vendor invoices in violation of Government Procurement

Regulations, which required a Shop Supervisor or Work Lead to sign the "RECEIVED AND ACCEPTED" stamp on the invoice.

6.    Defendant BARROSO would cause GPC holders to issue payments with their GPCs to co-conspirator A's companies, co-conspirator Bauer's companies, and other co-conspirator vendors, or, in the alternative, provide co-conspirator A, co-conspirator Bauer, and other co-conspirator vendors with GPC numbers, expiration dates, and credit card verification ("CCV") numbers so that the vendors could implement charges to GPC accounts.

7.    At defendant BARROSO's direction, co-conspirator GPC holders would sign and backdate their signatures on GPCRs, falsely certifying compliance with Government Procurement Regulations.

8.    Upon receipt of government payments, co-conspirator Bauer would, as directed by defendant BARROSO, disburse funds to defendant BARROSO.  Prior to 2011, co-conspirator Bauer would pay defendant BARROSO kickbacks in cash.  Beginning in or about October 2011, co-conspirator Bauer would issue checks on behalf of his companies payable to one of defendant BARROSO's companies, namely, FB&S.  Beginning in or about January 2014, co-conspirator Bauer issued checks on behalf of his companies payable to two of defendant BARROSO's companies, namely, either FB&S or T&A.  During the period October 2011 through March 2014, co-conspirator Bauer issued over $850,000 in kickbacks in the form of checks to defendant BARROSO's companies.

9.    Defendant BARROSO would transfer funds from FB&S or T&A to purchase real estate, make payments on mortgages, purchase vehicles, or make payments to other, third party vendors for the benefit of defendant BARROSO and his family.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendant BARROSO and co-conspirators committed the following overt acts, among others, within the Central District of California, and elsewhere:

Overt Act 1: On December 30, 2013, defendant BARROSO authorized the purchase of a centrifugal pump from T&A in the amount of $2,785.

Overt Act 2: On December 30, 2013, defendant BARROSO signed a "RECEIVED AND ACCEPTED STAMP" on a T&A invoice acknowledging receipt of a centrifugal pump.

Overt Act 3: On January 6, 2014, defendant BARROSO signed and backdated a GPCR authorizing the purchase of a centrifugal pump from T&A in the amount of $2,785.

Overt Act 4: On January 6, 2014, a GPC holder signed and backdated a GPCR falsely certifying that the purchase of a centrifugal pump from T&A in the amount of $2,785 was in compliance with Government Purchase Regulations.

Overt Act 5: On January 10, 2014, co-conspirator Bauer issued a $2,620 check on behalf of GCS payable to FB&S.

Overt Act 6: On January 15, 2014, defendant BARROSO issued a $3,195.77 check on behalf of FB&S to Bank of America FIA Card Services to pay for "repairs to condo".

Overt Act 7: On January 16, 2014, co-conspirator Bauer issued a $2,400 check on behalf of WMS payable to FB&S.

Overt Act 8: On January 24, 2014, defendant BARROSO issued a $1,640 check on behalf of FB&S to the Rancho Perilla Master Association to pay homeowners association fees.

Overt Act 9: On January 24, 2014, defendant BARROSO issued a $710 check on behalf of FB&S to the Chico Westwood Condo Association to pay homeowners association fees.

Overt Act 10: On January 22, 2014, defendant BARROSO added the following language onto a Work Order that had requested the repair of a leaking shower at Point Mugu Building #642 ("PM642"): "SEND TO T AND A SERVICES 1/22/14 FB."

Overt Act 11: On January 29, 2014, Company 1 sent an invoice to T&A for five hours of labor performed in connection with replacing a leaking shower valve cartridge at PM642.  The invoice specified labor costs $475 and material costs of $68.38, with a total invoice amount of $543.38.

Overt Act 12: On January 29, 2014, defendant BARROSO whited-out quantities and dollar amounts on the Company 1 invoice and wrote in higher amounts that falsely increased the labor cost from $475 to $1,140 and increased the material cost from $68.38 to $450 resulting in a total invoice amount of $1,590.

Overt Act 13: On January 30, 2014, defendant BARROSO prepared an estimate from T&A to the PWD for the replacement of a shower valve cartridge at PM642 in the inflated amount of $1,590.

Overt Act 14: On January 30, 2014, defendant BARROSO signed, backdated, and authorized a GPCR for the purchase of services and material in connection with the repair of the shower valve cartridge at PM642 for $1,590.

Overt Act 15: On January 30, 2014, a GPC holder signed and backdated a GPCR falsely certifying that the purchase of services and material from T&A in connection with the $1,590 replacement of the

shower valve cartridge at PM642 was in compliance with Government Purchase Regulations.

Overt Act 16: On January 30, 2014, co-conspirator Bauer issued a $2,750 check on behalf of MNC payable to FB&S.

Overt Act 17: On February 4, 2014, co-conspirator Bauer issued a $2,600 check on behalf of GCS payable to FB&S.

Overt Act 18: On February 12, 2014, defendant BARROSO transferred $5,000 from FB&S to his personal checking account ending in 6394.

Overt Act 19: On February 27, 2014, defendant BARROSO authorized the purchase of valves and pipes and the installation of said items from T&A for $1,851.

Overt Act 20: On February 27, 2014, defendant BARROSO signed a "RECEIVED AND ACCEPTED STAMP" on a T&A invoice, acknowledging receipt of material and the satisfactory completion of services from T&A.

Overt Act 21: On February 27, 2014, defendant BARROSO signed and backdated a GPCR authorizing the purchase of valves and pipes with installation from T&A for $1,851.

Overt Act 22: On February 27, 2014, a GPC holder signed and backdated a GPCR falsely certifying that the purchase and installation of valves and pipes from T&A for $1,851 was in compliance with Government Purchase Regulations.

Overt Act 23: On February 28, 2014, defendant BARROSO issued a $5,600 check on behalf of FB&S to the Internal Revenue Service to pay personal federal income taxes for himself and his wife.

<u>Overt Act 24</u>: On March 5, 2014, co-conspirator Bauer issued a $2,125 check on behalf of WMS payable to FB&S.

<u>Overt Act 25</u>: On March 10, 2014, defendant BARROSO issued a $1,031.66 check on behalf of FB&S to make a mortgage payment on his property.

<u>Overt Act 26</u>: On March 10, 2014, defendant BARROSO issued a $2,647.58 check on behalf of FB&S to make a mortgage payment on his property.

COUNT TWO

[18 U.S.C. §§ 208(a), 216(a)(2)]

Beginning in or before 2008, and continuing through on or about March 20, 2014, in Ventura County, within the Central District of California, defendant FERNANDO BARROSO, SR. ("BARROSO"), while employed by the executive branch of the United States Government, namely, the Department of Defense, U.S. Navy, knowingly and willfully participated personally and substantially as a Government officer and employee, through decision, approval, recommendation, the rendering of advice, and otherwise, in an application, contract, claim, and other particular matters, in which both defendant BARROSO and organizations in which defendant BARROSO was serving as an officer, director, or employee, namely, FB&S and T&A, had a financial interest.

COUNT THREE

[18 U.S.C. § 287]

On or about January 30, 2014, in Ventura County, within the Central District of California, and elsewhere, defendant FERNANDO BARROSO, SR. ("BARROSO"), made and presented to a department and agency of the United States, namely, the U.S. Navy, NAVFAC, PWD, a false, fictitious, and fraudulent claim upon and against the United States, namely, an invoice from T&A in the amount of $1,590 for 12 hours of labor and materials in connection with the replacement of the shower valve cartridge at PM642, knowing such claim to be false, fictitious, and fraudulent in that, as defendant BARROSO then well knew, T&A had not performed such services, but instead the U.S. Navy had previously engaged Company 1 to perform such services at a cost of $543.38.

COUNTS FOUR THROUGH EIGHT

[18 U.S.C. § 201(b)(2)]

Beginning in or about 2008 and continuing until on or about March 20, 2014, in Ventura County, within the Central District of California, defendant FERNANDO BARROSO, SR., a public official, namely, the Master Scheduler for the U.S. Navy, NAVFAC, PWD, directly and corruptly demanded, sought, received, and accepted something of value, namely, money as described below, in return for (i) being influenced in the performance of official acts; (ii) being influenced to commit and aid in committing, colluding in, and allowing, a fraud on the United States; and (iii) being induced to do an act in violation of his official duty, namely, directing and approving government purchase orders and payments to the following companies controlled by Theodore Bauer:

| COUNT | DATE | AMOUNT | SOURCE |
| --- | --- | --- | --- |
| FOUR | 1/10/14 | $2,620 | GCS |
| FIVE | 1/16/14 | $2,400 | WMS |
| SIX | 1/30/14 | $2,750 | MNC |
| SEVEN | 2/4/14 | $2,600 | GCS |
| EIGHT | 3/5/14 | $2,125 | WMS |

COUNT NINE

[18 U.S.C. § 1001(a)(2)]

On or about March 17, 2014, in Ventura County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the Department of Defense, U.S. Navy, defendant FERNANDO BARROSO, SR. ("BARROSO") knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation on a United States Office of Government Ethics Form 450, in which defendant BARROSO represented that he had no position outside the United States Government in any corporation, partnership, trust, or other business entity during the calendar year 2013, when, in truth and fact, as defendant BARROSO then well knew, defendant BARROSO, in 2013, (a) operated as Chief Executive Officer for FB&S, a company he had previously incorporated that received payments from GCS, WMS, and MNC, companies that had received GPC payments at defendant BARROSO's direction, and (b) owned 85 percent of T&A, a business that directly received GPC payments at defendant BARROSO's direction.

COUNT TEN

[26 U.S.C. § 7206(1)]

On or about May 20, 2013, in Ventura County, within the Central District of California, defendant FERNANDO BARROSO, SR. ("BARROSO"), a resident of Oxnard, California, willfully made and subscribed to a materially false 2011 United States Corporate Tax Return, Form 1120S, on behalf of FB&S, an S Corporation, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, that defendant BARROSO did not believe to be true and correct as to every material matter, in that the Form 1120S said that FB&S had received $16,080 in gross receipts, when, in truth and fact, as defendant BARROSO then well knew, FB&S had received at least $95,200 in gross receipts during the 2011 tax year.

COUNT ELEVEN

[26 U.S.C. § 7206(1)]

On or about May 28, 2013, in Ventura County, within the Central District of California, defendant FERNANDO BARROSO, SR. ("BARROSO"), a resident of Oxnard, California, willfully made and subscribed to a materially false 2011 United States Individual Income Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, that defendant BARROSO did not believe to be true and correct as to every material matter, in that the Form 1040 said that defendant BARROSO had received $104,256 in total income, when, in truth and fact, as defendant BARROSO then well knew, his total income in 2011 was substantially in excess of that amount.

COUNT TWELVE

[26 U.S.C. § 7206(1)]

On or about March 4, 2014, in Ventura County, within the Central District of California, defendant FERNANDO BARROSO, SR. ("BARROSO"), a resident of Oxnard, California, willfully made and subscribed to a materially false 2012 United States Corporate Tax Return, Form 1120S, on behalf of FB&S, an S Corporation, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, that defendant BARROSO did not believe to be true and correct as to every material matter, in that the Form 1120S said that FB&S had $331,225 in Cost of Goods Sold, when, in truth and fact, as defendant BARROSO then well knew, FB&S had incurred no such costs during the 2012 tax year.

COUNT THIRTEEN

[26 U.S.C. § 7206(1)]

On or about March 5, 2014, in Ventura County, within the Central District of California, defendant FERNANDO BARROSO, SR. ("BARROSO"), a resident of Oxnard, California, willfully made and subscribed to a materially false 2012 United States Individual Income Tax Return, Form 1040, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, that defendant BARROSO did not believe to be true and correct as to every material matter, in that the Form 1040 said that defendant BARROSO had $163,069 in total income, when, in truth and fact, as defendant BARROSO then well knew, his total income in 2012 was substantially greater than that amount.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One and Four through Eight of this Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

a.   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any of the offenses; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/

Foreperson

NICOLE T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
Assistant United States Attorney
Chief, Public Corruption and
   Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Deputy Chief, Public Corruption
   and Civil Rights Section